## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUETTS

| | |
|---|---|
| **KAYLA COUNTS, KAYLYNN MAJOR, and ERICA DUJARDIN,** individually, and on behalf of others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>**WAYFAIR LLC**, a Delaware Limited Liability Corporation,<br><br>                Defendant. | Case No.:<br><br>Hon.: |

## NATIONWIDE COLLECTIVE AND CLASS ACTION
## COMPLAINT AND JURY DEMAND

Plaintiffs, KAYLA COUNTS, KAYLYNN MAJOR, and ERICA DUJARDIN (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant WAYFAIR, LLC ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10, *et seq.*, the Oregon Wage Laws ("OWL"), Or. Rev. Stat. Ann § 653.010, *et seq.*, and the Maine Wage Payment Laws ("MWPL"), Me. Rev. Stat. tit. 26, § 621, *et seq.*

2.      Defendant offers consumers throughout the country home décor products for purchase via its website and mobile application.[1]

---

[1] *See* www.wayfair.com (last visited July 27, 2023).

3.     Defendant employs remote hourly employees throughout the United States to provide its consumers with customer service.

4.     These hourly employees, hereinafter collectively referred to as Customer Service Representatives (or "CSRs"), have a variety of internal job titles, including Inbound Customer Service Representative, Inbound Sales Representative, Front Line Customer Outreach Team, and Fraud Specialist.

5.     Regardless of their job title, the material aspects of their employment, duties performed, and the wage and hour violations complained of herein are the same for all CSRs.

6.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

7.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*

9.     Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

10.     Defendant requires its CSRs to work a full-time schedule, plus overtime, however,

Defendant does not compensate CSRs for all work performed.

11.     Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

12.     This policy results in CSRs not being paid for all time worked, including overtime.

13.      While performing their job responsibilities, Defendant's CSRs are required to use multiple computer networks, software programs, applications and phone systems.

14.     The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

15.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

16.     Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

17.     Plaintiffs seek to represent in this action all current and former remote CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

18.     Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

19.     Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

20.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective

and Classes, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

21. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

22. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

23. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

24. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

25.

26. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

27. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

28. This Court has personal jurisdiction over Defendant because it conducts business

within the State of Massachusetts, has its principal place of business and headquarters in Massachusetts, is registered with the Massachusetts Secretary of State and employs individuals within the state of Massachusetts.

29.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Massachusetts, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## COVERAGE

31.     Defendant's gross annual sales revenue exceeded $500,000 at all times relevant hereto.

32.     At all times relevant, Defendant had two or more employees.

33.     At all times relevant, Defendant had two or more employees who handled materials, good and/or tools that traveled in interstate commerce such as furniture, computers, phones, and other office and warehouse equipment necessary for Defendant's business.

34.     At all times relevant hereto, Defendant simultaneously conducted business operations in two or more states.

35.     Plaintiffs regularly and customarily engaged in interstate communications as part

of their primary duties for Defendant throughout their employment and thus are individually covered by the FLSA.

36.     Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

**PARTIES**

37.     Plaintiff KAYLA COUNTS ("Plaintiff Counts") is a South Carolina resident who worked for Defendant as a remote CSR in South Carolina within the last three years.

38.     Plaintiff Counts held the job title of Inbound Sales Representative.

39.     Defendant paid Plaintiff Counts for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $15.00 per hour, plus non-discretionary bonuses.

40.     Plaintiff Counts signed a consent to join this collective action lawsuit. **Exhibit 1**, Counts Consent to Join.

41.     Plaintiff KAYLYNN MAJOR ("Plaintiff Major") is an Oregon resident who worked for Defendant as a remote CSR in Oregon within the last three years.

42.     While employed by Defendant, Plaintiff Major held the positions of Inbound Customer Service Representative, Front Line Customer Outreach Team, and Fraud Specialist.

43.     Defendant paid Plaintiff Major for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $22.50 per hour, plus non-discretionary bonuses.

44.     Plaintiff Major signed a consent to join this collective action lawsuit. **Exhibit 2**,

Major Consent to Join.

45.     Plaintiff ERICA DUJARDIN ("Plaintiff Dujardin") is a Maine resident who worked for Defendant as a remote CSR in Maine within the last three years.

46.     Defendant paid Plaintiff Dujardin for her services in the form of an hourly wage, for all credited hours worked.

47.     Plaintiff Dujardin signed a consent to join this collective action lawsuit. **Exhibit 3**, Dujardin Consent to Join.

48.     Defendant is a Delaware limited liability company.

49.     Defendant is headquartered in Boston, Massachusetts.

50.     Defendant is registered to do business with the Massachusetts Secretary of State (Identification Number 000973546).

51.     Defendant maintains its principal place of business at 4 Copley Place, Boston, Massachusetts 02116.

## GENERAL ALLEGATIONS

52.      Defendant employed Plaintiffs and those similarly situated as remote CSRs from Plaintiffs' home offices within the last two (2) years.

53.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

54.     Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that regularly require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

55.     These schedules result in CSRs routinely working overtime on a weekly basis.

56.     Throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

57.     At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

58.     Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

59.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

60.     These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

61.     Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

62.     Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can log into Defendant's phone system and begin taking and making phone calls.

63.     CSRs, including Plaintiffs, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift.

64.     Defendant enforces their policy of requiring all computer networks, programs and

applications be open and ready at the commencement of a CSR's shift, and critically, before they clock in, through their performance metrics and schedule adherence policies.

65.     More specifically, being clocked in but unavailable to take or make calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

66.     Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries from consumers.

67.     Defendant's performance metrics included how quickly the CSR could resolve the consumer's issue (the "average handle time").

68.     These performance metrics necessarily require that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

69.     In order to be fully prepared to promptly and efficiently handle calls, CSRs were required to have loaded and logged into all of their computer programs at the moment they clocked in to begin receiving or making calls.

70.     Further, Defendant insisted that CSRs clock-in as close as possible to the scheduled start time, but not after the start of their scheduled shift.

71.     Defendant subjected Plaintiffs and all other CSRs to discipline for clocking in after the start of their scheduled shift, which violated their companywide attendance policy.

72.     Additionally, while Defendant routinely scheduled CSRs to work forty hours per week, Defendant also prohibited CSRs from working overtime hours without advanced approval.

73.     Accordingly, recording the time spent working outside of their scheduled shift

would violate Defendant's prohibition on unapproved overtime.

74.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

75.     Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

76.     Thus, the hours reflected on the CSRs' pay stubs are inaccurate.

77.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

78.     This time could easily be recorded, accounted for and paid, but Defendant chose not to credit such time as time worked.

### A.     Pre-Shift Off-the-Clock Work

79.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

80.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

81.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) to fifteen (15) minutes per day, and the tasks can take longer (upwards of thirty (30) minutes) if CSRs experience technical problems with the computer, software, and/or applications.

82.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other

10

CSRs, were required to perform a number of compensable work tasks including turning on and logging into their computers; connecting to Defendant's virtual private network (VPN); and loading and logging into a number of essential work programs. Once connected to the VPN, CSRs are required to load and log-into a number of essential work programs.

83.    Although there was some variation in computer programs used amongst various CSR positions, the core and essential programs used were the same for all CSRs.

84.    For example, all CSRs used the Cisco VPN, Finesse, G-mail, Jabber, Slack, Aspect/Verinit, and Workday.

85.    Other programs used by CSRs include the Service Hub, Knowledge Hub, Sift, and Ecota.

86.    Additionally, all CSRs were required to clock-in using a dual authentication process with the programs Okta and Workforce.

87.    After loading and logging into all of their computer programs, CSRs requested a code through Okta that was sent to their phone.

88.    From there, the CSRs inputted the code into the Workday program to clock themselves in.

89.    The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept or make calls.

90.    Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

91.    Instead, Defendant maintains attendance policies that require them to be call-ready at the moment they clock-in and prohibit them from recording hours outside of their regularly scheduled shifts.

92.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities.

**B.     Meal-Period Off-the-Clock Work**

93.     Defendant provides their CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

94.     Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

95.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

96.     Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

97.     On most days, CSRs spend approximately three (3) to four (4) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

98.     Defendant's management is aware that this was Plaintiffs' and other CSRs' practice

to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C. Post-Shift Off-the-Clock Work

99.    Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

100.   The shutdown and logout process, along with post-shift claims processing, requires another approximately one (1) to two (2) minutes of off the clock work per shift.

101.   Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

102.   Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

103.   The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D. Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

104.   An example of specific workweeks where Defendant failed to pay Plaintiff Counts all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 04/24/2022 to 05/07/2022

- Plaintiff Counts was paid at a rate of $15.00 per hour for the forty hours of each work week and $22.50 per hour for 4.12 overtime hours Defendant credited her with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fourteen (14) to

13

twenty one (21) minutes per shift, at five shifts per week, Plaintiff Counts should have been paid an additional seventy (70) to one hundred five (105) minutes at her overtime rate of $22.50 during the overtime workweek of 04/24/2022 to 04/30/2022.

105.     Plaintiffs Major and Dujardin similarly routinely worked over forty hours or more hours per week for which Defendant failed to pay Plaintiffs Major and Dujardin legally-mandated overtime premium pay, as required by the FLSA.

106.     The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

### E.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

107.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

108.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

109.     At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

110.     Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

111.     At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

112.     At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

113.     Defendant expressly trained and instructed CSRs to perform the above-described

pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment they clocked in for their shifts.

114.    At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

115.    Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

116.    Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

117.    In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

118.    Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

119.    Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

120.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this

definition if necessary.

121.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

122.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

123.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

124.    Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

125.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.

126.    This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

   b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

127.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

128.    Defendant's unlawful conduct has been widespread, repeated and consistent.

129.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

130.     The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

131.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

132.     The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

133.     Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

134.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

135.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

136.     Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

137.     The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 SOUTH CAROLINA CLASS ACTION ALLEGATIONS

138.   Plaintiff Counts brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own

behalf and on behalf of:

> *All current and former CSRs who worked for Defendant in South Carolina at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 South Carolina Class"). Plaintiff Counts reserves the right

to amend the putative class definition if necessary.

139.   The members of the Rule 23 South Carolina Class are so numerous that joinder of

all Rule 23 South Carolina Class members in this case would be impractical.

140.   Plaintiff Counts reasonably estimates that there are hundreds of Rule 23 South

Carolina Class members. Rule 23 South Carolina Class members should be easy to identify from

Defendant's computer systems and electronic payroll and personnel records.

141.   There is a well-defined community of interest among Rule 23 South Carolina Class

members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 South Carolina Class.

142.    These common legal and factual questions include, but are not limited to, the

following:

      a.   Whether the pre-and post-shift time Rule 23 South Carolina Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

      b.   Whether Defendant failed to pay all "wages" owed to the Rule 23 South Carolina Class, as contemplated by the SCPWA;

      c.   Whether Defendant unlawfully withheld or diverted wages from the Rule 23 South Carolina Class in violation of the SCPWA;

      d.   Whether Defendant failed to properly notify each member of the Rule 23 South Carolina Class in writing at the time of hiring the normal hours and wages agreed upon, the time and place of payment, and the deductions made

from their wages;

e.   Whether Defendant properly furnished each Rule 23 South Carolina Class Member with an itemized statement showing the gross pay and deductions;

f.   Whether Defendant failed to timely pay all wages owed to the Rule 23 South Carolina Class, as required by SCPWA; and

g.   Whether the Rule 23 South Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 South Carolina Class but otherwise not paid, and if so, the appropriate amount thereof.

143.   Plaintiff Count's claims are typical of those of the Rule 23 South Carolina Class in that she and all other Rule 23 South Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

144.   Plaintiff Counts claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 South Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 South Carolina Class members.

145.   Plaintiff Counts will fully and adequately protect the interests of the Rule 23 South Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of Minnesota wage and hour class actions.

146.   Neither Plaintiff Counts nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

147.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 South Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

148.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

149.    This case will be manageable as a Rule 23 Class action.

150.    Plaintiff Counts and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

151.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

152.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

153.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the South Carolina Class seeks an order from this Court enjoining Defendant from its continued violation of the SCPWA and for an award of civil penalties.

154.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 OREGON CLASS ACTION ALLEGATIONS

155.    Plaintiff Major brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant in Oregon at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 Oregon Class"). Plaintiff Major reserves the right to amend the putative class definition if necessary.

156.    The members of the Rule 23 Oregon Class are so numerous that joinder of all Rule 23 Oregon Class members in this case would be impractical.

157.    Plaintiff Major reasonably estimates that there are hundreds of Rule 23 Oregon Class members. Rule 23 Oregon Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

158.    There is a well-defined community of interest among Rule 23 Oregon Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Oregon Class.

159.    These common legal and factual questions include, but are not limited to, the following:

a.    Whether the pre-and post-shift time Rule 23 Oregon Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

b.    Whether Defendant failed to pay all wages owed to the Rule 23 Oregon Class, as contemplated by the OWL;

c.    Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Oregon Class in violation of the OWL;

d.    Whether Defendant properly furnished each Rule 23 Oregon Class Member with an itemized statement showing the gross pay and deductions;

e.    Whether Defendant failed to timely pay all wages owed to the Rule 23 Oregon Class, as required by OWL; and

f.    Whether the Rule 23 Oregon Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Oregon Class but otherwise not paid, and if so, the appropriate amount thereof.

160.    Plaintiff Major's claims are typical of those of the Rule 23 Oregon Class in that she and all other Rule 23 Oregon Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

161.    Plaintiff Major's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Oregon Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Oregon Class members.

162.    Plaintiff Major will fully and adequately protect the interests of the Rule 23 Oregon Class and she has retained counsel who are qualified and experienced in the prosecution of Oregon wage and hour class actions.

163.    Neither Plaintiff Major nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Oregon Class.

164.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Oregon Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

165.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

166.    This case will be manageable as a Rule 23 Class action. Plaintiff Major and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

167.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct.

22

1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

168.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Oregon Class and declaratory relief is appropriate in this case with respect to the Rule 23 Oregon Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

169.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Oregon Class seeks an order from this Court enjoining Defendant from its continued violation of the OWL and for an award of civil penalties.

170.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Oregon Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 MAINE CLASS ACTION ALLEGATIONS

171.    Plaintiff Dujardin brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in Maine at any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 Maine Class"). Plaintiff Counts reserves the right to amend the putative class definition if necessary.

172.    The members of the Rule 23 Maine Class are so numerous that joinder of all Rule 23 Maine Class members in this case would be impractical.

173.    Plaintiff Dujardin reasonably estimates that there are hundreds of Rule 23 Maine Class members. Rule 23 Maine Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

23

174.     There is a well-defined community of interest among Rule 23 Maine Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Maine Class.

175.      These common legal and factual questions include, but are not limited to, the following:

    a.     Whether the pre-and post-shift time Rule 23 Maine Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

    b.     Whether Defendant failed to pay all wages owed to the Rule 23 Maine Class, as contemplated by the MWPL;

    c.     Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Maine Class in violation of the MWPL;

    d.     Whether Defendant properly furnished each Rule 23 Maine Class Member with an itemized statement showing the gross pay and deductions;

    e.     Whether Defendant failed to timely pay all wages owed to the Rule 23 Maine Class, as required by MWPL; and

    f.     Whether the Rule 23 Maine Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Maine Class but otherwise not paid, and if so, the appropriate amount thereof.

176.     Plaintiff Dujardin claims are typical of those of the Rule 23 Maine Class in that she and all other Rule 23 Maine Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

177.     Plaintiff Counts claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Maine Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Maine Class members.

178.     Plaintiff Counts will fully and adequately protect the interests of the Rule 23 Maine Class and she has retained counsel who are qualified and experienced in the prosecution of wage

and hour class actions.

179.    Neither Plaintiff Dujardin nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Maine Class.

180.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Maine Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

181.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

182.    This case will be manageable as a Rule 23 Class action. Plaintiff Dujardin and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

183.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

184.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Maine Class and declaratory relief is appropriate in this case with respect to the Rule 23 Maine Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

185.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Maine Class seeks an order from this Court enjoining Defendant from its continued violation of the MWPL and for an

award of civil penalties.

186.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Maine Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

187.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

188.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

189.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

190.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

191.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

192.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

193.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fourteen (14) to twenty (21) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

194.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

195.    Defendant's violations of the FLSA were knowing and willful.

196.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

197.    Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

198.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 South Carolina Class Action)
### South Carolina Payment of Wages Act, SC Code Ann. §§ 41-10-10, *et seq.*;

199.    Plaintiff Counts re-alleges and incorporates all previous paragraphs herein.

200.    The South Carolina Payment of Wages Act (SCPWA) governs the activities of and imposes obligations on Defendant as the South Carolina Rule 23 Class Members' "employer." *See*, SC Code Ann. § 41-10-10.

201.    The SCPWA provides that "[e]very employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from wages." SC Code Ann. § 41-10-30 (A).

202.    Furthermore, "[a]ny changes in these terms must be made in writing at least seven calendar days before they become effective." *Id*.

203.     Defendant failed to properly and lawfully notify Plaintiff Counts and the Rule 23 South Carolina Class Members of changes to their hours and wages agreed upon, and the time and place of payment, and the deductions from their wages.

204.     Additionally, Defendant failed to furnish Plaintiff Counts and the Rule 23 South Carolina Class Members with an "itemized statement showing his gross pay and the deductions made from his wages for each pay period." SC Code Ann. § 41-10-30 (C).

205.     Defendant failed to pay Plaintiff Counts and the Rule 23 South Carolina Class Members "all wages due" as required by SC Code Ann. § 41-10-40.

206.     Defendant unlawfully withheld or diverted the wages of Plaintiff Counts and the Rule 23 South Carolina Class Members, in violation of SC Code Ann. § 41-10-40 (C).

207.     Defendant failed to "pay all wages due at the time and place designated," in violation of SC Code Ann. § 41-10-40 (D).

208.     The SCPWA provides that "[i]n the case of any failure to pay wages due to an employee … the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." SC Code Ann. § 41-10-80 (C).

209.     The SCPWA provides for a three-year (3) statute of limitations on all such civil claims. *Id*.

210.     Pursuant to SC Code Ann. § 41-10-100, "[n]o provision [of the SCPWA] may be contravened or set aside by private agreement.

**<u>COUNT III</u>**
**Alleging Violations of the Oregon Wage Laws, Or. Rev. State. Ann. § § 652.120 *et seq.*,**
**653.045, 653.160, and 653.261)**
**(On Behalf of the Rule 23 Oregon Class)**

211.     Plaintiff Major re-alleges and incorporates all other paragraphs as though fully stated herein.

212.    The Oregon Wage Laws (OWL) require employers to maintain detailed records regarding the payment of wages to employees, which includes the actual hours worked each week. Or. Rev. Stat. Ann § 653.045.  OWL requires overtime to be paid at 1.5 times the employee's regular hourly rate for all hours worked in excess of 40 in a workweek. Or. Rev. Stat. Ann § 653.261.

213.    Under the OWL, specifically, Or. Rev. Stat. Ann § 652.120, an employer is required to establish and maintain a regular payday on which date employees are paid all wages due and owing to them. Or. Rev. Stat. Ann § 652.120(a).

214.    The payday may not extend beyond a period of 35 days from the time that employee performed the work or from the date of the last regular payday. Or. Rev. Stat. Ann § 652.120(b).

215.    The OWL also provides requirements for the payment of wages upon termination of employment.

216.    Specifically, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of discharge or termination become due and payable not later than the end of the first business day after the discharge or termination."  Or. Rev. Stat. Ann § 652.140(1).

217.    Furthermore, "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases … then as a penalty for the non-payment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until action therefor is commenced.

218.    However, in no case shall the penalty wages or compensation continue for more than 30 days from the due date."[2] Or. Rev. Stat. Ann § 652.150.

219.    "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the

---

[2] Employers are also required to pay the monetary equivalent of any earned paid vacation time at the time employment ends using the employee's normal rate of pay.

employee might claim." Or. Rev. Stat. Ann § 652.160.

220.    The OWL also provides for the payment of the employee's attorney fees in recovering unpaid wages. Or. Rev. Stat. Ann § 652.200.

221.    Or. Rev. Stat. Ann § 652.200 states that an employer who pays an employee less than the wages to which the employee is entitled under ORS § 653.010 to § 653.261 is liable to the employee affected: (a) for the full amount of the wages … and (b) for civil penalties provided in ORS § 652.150.

222.    The penalty provided by ORS 652.150 is the wages or compensation of the employee shall continue from the due date therefor at the same hourly rate for eight hours per day until paid or until action therefore is commenced.

223.    However, in no case shall the penalty wages or compensation exceed 30 days from the due date. ORS § 652.150(1).

224.    If the employee submits a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages unless the employer fails to pay the full amount of the employee's unpaid wages within 12 days after receiving the notice.

225.    If the employee fails to submit a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages or compensation. ORS § 652.150(2).

226.    In failing to compensated the Oregon Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Oregon state laws referenced above.

227.    As a result, the Rule 23 Oregon Class have and will continue to suffer loss of income and other damages.

228.    Accordingly, the Rule 23 Oregon Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Oregon state laws at an amount to be proven at trial.

**COUNT IV**
**Violations of the Maine Wage Payment Law, Me. Stat. tit. 26, § 621, *et seq.***
**(On Behalf of Rule 23 Maine Class)**

229.     Plaintiff Dujardin re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

230.     Under the Maine Wage Payment Law (MWPL), "[a]t regular intervals not to exceed 16 days, every employer must pay in full all wages earned by each employee." Further, "[e]ach payment must include all wages earned within 8 days of the payment date." Me. Stat. tit. 26, § 621-A (1).

231.     Additionally, "[w]ages must be paid on an established day or date at regular intervals made known to the employee. The interval may not be increased without written notice to the employee at least 30 days in advance of the increase." *Id*. at § 621-A (2).

232.     "Payment of wages or salary must be made at the rate previously established by the employer." *Id*. at § 621-A (5).

233.     Under a chapter titled "Cessation of employment, the MWPL states that "[a]n employee leaving employment must be paid in full no later than the employees next established payday." *Id*. at § 626.

234.     Defendant failed to pay Plaintiff Dujardin and the Rule 23 Maine Class all wages owed by failing to pay them for the off-the-clock work activities discussed herein, or by otherwise withholding wages that were earned.

235.     Under the MWPL, "[e]very employer shall keep a true record showing the date and amount paid to each employee pursuant to section 621-A.

236.     Every employer shall keep a daily record of the time worked by each such employee … that is fixed without regard for the number of hours worked." *Id*. at § 622.

237.     Defendant failed to maintain records of all hours worked, by failing to account for the daily and routine off-the-clock work discussed herein.

238.   Under § 626-A of the MWPL, an employer who violates the MWPL "is subject to a forfeiture of not less than $100 nor more than $500 for each violation" in addition to the "unpaid wages and health benefits owed." *Id.* at § 626.

239.   Additionally, the MWPL provides that "any person or persons injured by an unlawful wage payment practice or policy that causes direct harm to workers may bring an action for injunctive relief to enjoy further wage theft. If the party seeking an injunction prevails, the employer is liable to pay the cost of suit, including a reasonable attorney's fee." *Id.* at § 639.

240.   Plaintiff Dujardin on behalf of herself and those similarly situated seek injunctive relief on all unlawful practices outlined herein, including the failure to pay for all hours worked and the unlawful withholding of wages earned but not paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, on behalf of the Rule 23 Minnesota Class, the Rule 23 Oregon Class, and on behalf of the Rule 23 Maine Class requests judgment as follows:

a.   Certifying this case, as soon as practicable, as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I), and permitting prompt notice to issue to all similarly-situated employees;

b.   Certifying this action as a class action (for the Rule 23 Minnesota, Oregon, and Maine Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs state law claims under the SCPWA, OWL, and MWPL (Counts II-IV);

c.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the Rule 23 South Carolina, Oregon, and Maine Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.   Designating Plaintiffs as the representatives of the FLSA collective action and undersigned counsel as Class counsel for same;

e.  Designating Plaintiffs as the representatives of their respective state Rule 23 Classes, and undersigned counsel as Class counsel for same;

f.  Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.  Declaring Defendant's violation of the FLSA was willful and/or in reckless disregard;

h.  Declaring Defendant violated the SCPWA as cited herein;

i.  Declaring Defendant violated the OWL as cited herein;

j.  Declaring Defendant violated the MWPL as cited herein;

k.  Declaring Defendant's violations of the state laws was willful;

l.  Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class, the Rule 23 state Classes the full amount of damages and liquidated damages available by law;

m.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

n.  Awarding the issuance of civil penalties and forfeitures as discussed herein;

o.  Awarding liquidated and treble damages as available by law;

p.  Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

q.  Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 28, 2023         Respectfully Submitted,

*s/ Kelsey Raycroft Rose*

**Kelsey Raycroft Rose**
**MORGAN & MORGAN, P.A.**
155 Federal Street, Suite 1502
Boston, MA 02110
Phone:  (857) 383-4903
Fax:  (857) 383-4928
KRose@forthepeople.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 27777) (*PHV Forthcoming*)
8151 Peters Road, 4th Floor
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PHV Forthcoming*)
402 W Liberty  Street
Ann Arbor, MI 48103-4388
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*PHV Forthcoming*)
126 South Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*