**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ) | |
| **KAYLA COUNTS, KAYLYNN MAJOR,** ) | |
| **and NATHAN CHURCHILL,** ) | |
| **individually, and on behalf of others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | **Civil Action No.** |
| ) | **23-11706-FDS** |
| **v.** ) | |
| ) | |
| **WAYFAIR LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER ON PLAINTIFFS'**
**MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE**

**SAYLOR, C.J.**

This case involves claims by current and former employees against their employer for

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the wage laws of

several states.

Plaintiffs Kayla Counts, Kaylynn Major, and Nathan Churchill were employed by

defendant Wayfair LLC in various customer-service roles.  They contend that Wayfair failed to

compensate them for overtime work that they were required to perform prior to the beginning of

their shifts, before and after lunch breaks, and after their shifts ended.  They contend that by

doing so, Wayfair violated section 207 of the FLSA, which requires employers to compensate all

non-overtime-exempt employees at not less than one-and-one-half times their regular rate for

each hour worked in excess of 40 hours per workweek, and related state laws.

Section 216(b) of the FLSA permits employees to bring collective actions on behalf of

themselves and others who are similarly situated.  Plaintiffs have moved to conditionally certify

a collective action and to allow notice of that action to be sent to all similarly situated employees.

For the following reasons, that motion will be granted.

I.      **Background**

        A.      **Factual Background**

The facts are taken from the amended pleadings and the evidentiary submissions of the

parties.[1]

Wayfair, LLC is a home décor company that offers products to consumers nationwide

through its website and a mobile application.  (Compl. ¶ 2).  Wayfair is a limited liability

company with its principal place of business in Boston, Massachusetts.  (*Id.* ¶ 39).

Plaintiffs Kayla Counts, Kaylynn Major, and Nathan Churchill are non-exempt current

and former employees of Wayfair who worked remotely and who were paid hourly rates.  (*Id.* ¶¶

30, 33, 36, 42).  They each perform (or performed) customer-facing work in the course of their

employment at Wayfair.  (*Id.* ¶ 41).

Counts is a South Carolina resident and a former Wayfair employee.  (*Id.* ¶ 30).  She

worked remotely from South Carolina, fielding incoming communications from customers and

assisting them with placing new orders.  (*Id.* ¶ 30; Supp. Resp. at 2).  She alleges that her job

titles were "Inbound Sales Representative" and "Sales Agent Generalist Primary NA."  (Compl.

---

[1] When considering motions to conditionally certify collective actions pursuant to 29 U.S.C. § 216, courts consider "the pleadings, declarations, or other limited evidence to assess whether the 'proposed members of a collective are similar enough to receive notice of the pending action.'"  *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *Swales*, 985 F.3d at 436); *see also Trezvant v. Fidelity Emp'r Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006) (considering "the pleadings and any affidavits which have been submitted"); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001).  "At this stage, however, courts do not need 'to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.'"  *Trezvant*, 434 F. Supp. 2d at 43 (quoting *Kalish v. High Tech. Inst., Inc.*, 2005 WL 1073645, at *2 (D. Minn. Apr. 22, 2005)).

¶ 30; Supp. Resp. at 2).[2]

Major is an Oregon resident and a former Wayfair employee.  (Compl. ¶ 33).  She worked remotely from Oregon as a "Frontline Customer Service Representative," among other roles, while employed at Wayfair.  (*Id.*).[3]  In that role, she assisted customers with existing orders.  (*Id.* ¶ 4).

Churchill is a resident of Maine.  (*Id.* ¶ 36).  He is currently employed at Wayfair, working remotely from Maine.  (*Id.*).  He answers questions from customers about existing orders.  (*Id.*, Supp. Resp. at 2).  His previous job title was "Frontline Customer Service Representative" (or "Associate Service Consultant–Sales & Service"), but he is currently in the role of "Customer Resolution Expert" (or "Service Specialist II CARE Chat"), a member of the CARE team.  (Compl. ¶ 36; Answer ¶ 4; Supp. Resp. at 2).

### 1.    Job Duties

Wayfair employs customer-service employees who work remotely throughout the country to assist customers with placing orders and to answer questions about new and existing orders.  (Compl. ¶ 41; Answer ¶ 4).  The group of customer-service employees at issue, which the complaint calls "CSEs," communicate with customers by phone, e-mail, or a chat application.  (Compl. ¶ 42; Supp. Mem. Exs. 3, 4).[4]  CSEs work at least eight hours a day, five

---

[2] While there is considerable dispute concerning the job titles used internally and externally at Wayfair, the parties largely agree about the general duties performed by plaintiffs.  (*See* Supp. Resp. at 2).

[3] Wayfair contends that Major's job titles were "Service Specialist II Service Security, Service Specialist I Customer Outreach, and Senior Service Consultant."  (Answer ¶ 33).

[4] Wayfair does not use the term "Customer Service Employee" ("CSE") internally to refer to a job title or group of job titles.  However, both parties use the term for ease of reference.  (Compl. ¶ 3; Opp. at 1 n.1).

days a week, and up to 40 hours or more per week.  (Compl. ¶ 42).[5]

CSEs may take incoming calls from customers who wish to place new orders with

Wayfair or assist customers with existing orders and questions about products.  (*Id.* ¶ 4; Mem.

Ex. 7 ¶ 3).  According to the complaint, members of another group, the Customer Resolution

Expert (CARE) team, are also properly included within the term CSEs.  (Compl. ¶ 3).  The

CARE team is composed of more experienced customer-service representatives who handle

complex calls that have been transferred from less-experienced customer-service representatives

at Wayfair.  (*Id.* ¶ 4; Churchill Decl. ¶ 3; Supp. Mem. at 5).  In addition, the CARE Team

answers chats and inbound calls about products directly from Wayfair customers and

occasionally makes outbound calls to customers.  (Churchill Decl. ¶ 3; *see* Dutertre Decl. ¶ 10).

### 2. <u>Alleged Overtime</u>

The complaint alleges that the named plaintiffs were required to perform compensable

off-the-clock work before and after their shifts and during unpaid meal periods.  (Compl. ¶ 9).

According to the complaint, Wayfair did not pay them for some portion of that overtime work.

(*Id.* ¶ 10).

Specifically, the complaint alleges that Wayfair "expressly instructs and trains CSEs to

have all of their computer networks, software programs and applications open and ready at the

start of their scheduled shifts," but they are allegedly "instructed to only include the time that

they are fully prepared to field calls in their hours worked each shift."  (*Id.* ¶¶ 50-51).[6]  That

---

[5] Wayfair does not dispute that the named plaintiffs' jobs were hourly, non-exempt positions and that the named plaintiffs generally worked eight hours per day, on average five days a week, and up to 40 hours or more in a workweek.  (Answer ¶ 42).

[6] Although the complaint concedes that there may be some variation among the specific programs CSEs use, it alleges that "it was extremely minimal, and the core and essential programs used were the same for all CSEs." (Compl. ¶ 76).  It alleges that all CSEs used Cisco AnyConnect, Finesse, G-mail, Okta, programs for chats and identifying breaks, the Wayfair website, and Workday.  (*Id.*; *see also* Counts Decl. ¶ 8; Churchill Decl. ¶ 8; Major Decl. ¶ 8).  All CSEs were required to use the dual authentication procedure for Workday and Okta, and all CSEs

process, called becoming "call ready" or "chat ready," allows CSEs to field communications from customers. (Mem. at 4-5; Opp. at 3). The complaint alleges that Wayfair prohibits overtime unless approved in advance and requires the logged worktime of CSEs to be consistent with the shift times scheduled by their supervisors. (*Id.* ¶ 52).

The complaint alleges that those practices are enforced through Wayfair's point-based attendance and schedule-adherence policies. (Compl. ¶ 53). It alleges that Wayfair uses a system of performance scores that measure "various performance metrics, including but not limited to the CSEs' complete and correct resolution of issues and inquiries from consumers . . . [and] how quickly the CSE could resolve the consumer's issue." (*Id.* ¶¶ 55-56).[7] If a CSE is available in the phone system but does not have the requisite computer programs running, that could result in "prolonged call times, providing inaccurate information, or a poor customer experience," affecting the CSE's performance score. (*Id.* ¶ 57). A poor performance score can result in disciplinary action, including termination. (*Id.* ¶ 54; *see* Opp. Ex. G).

The complaint also alleges that defendant's remote-employee policies require CSEs to

---

utilized the Wayfair Support Hub, Service Hub, and Knowledge Hub. (Compl. ¶¶ 77, 78). Wayfair does not dispute that some, but not all, of the described employees used those programs. (Answer ¶¶ 76-77).

[7] Plaintiffs allege, and Wayfair does not dispute, that Wayfair maintains a point-based attendance policy for CSEs. (Mem. at 7; Opp. at 5). Plaintiffs allege that attendance points are assessed for CSEs reporting late to work, leaving work early, or mid-day absences. (Mem. at 7). If a CSE accumulates too many occurrence points as a result of reporting late to work, for example, employees can be placed on a "performance improvement plan" or may ultimately be terminated. (*Id.* Ex. 3 ¶ 15; Ex. 4 ¶ 15; Ex. 5 ¶ 15; Ex. 6 ¶ 15; Ex. 7 ¶ 15; Ex. 8 ¶ 15; Ex. 9 ¶ 15; Ex. 10 ¶ 15). Plaintiffs allege that CSEs must begin the call-ready process well in advance of their scheduled shift to avoid accumulating attendance points. (*Id.* at 6). Wayfair contends that the Call Center Addendum policy, effective January 2022, requires applicable "CSEs to be call ready by 4 minutes and 59 seconds after the start time of their shift" and that CSEs only accrue attendance points if they are not call ready until five or more minutes after their shift. (Opp. at 5; *Id.* Ex. G at 9, 11, Ex. A ¶ 9, Ex. B ¶ 9, Ex. C ¶ 9). Moreover, "Wayfair also allows these CSEs to clock in up to five minutes before" their scheduled shift, and "are paid for all time after they clock in." (Opp. at 5; *Id.* Ex. A ¶ 15, Ex. B ¶ 15, Ex. C ¶ 15). Plaintiffs contend that an Employee Guide, published November 2022, superseded the Addendum and required that "the time recorded in the time management system [to] accurately reflect[] the schedule/shift provided to you by your immediate supervisor or WFM. Any deviation from the schedule/shift must be approved in advance." (Mem. Ex. 11 at 38-39; *see* Reply at 1; Reply Ex. 1 at 49 ("[T]his Guide replaces any previous guide, manual and handbook, and to the extent inconsistent, any previous understanding, practice, policy, or representation concerning the subject matters addressed in this Guide.")).

perform off-the-clock work tasks when technical issues or system updates occur.  (Mem. at 16; *Id.* Ex. 9 ¶ 28; *Id.* Ex. 13 ("Appendix A:  Virtual Employee Requirements and Process - Hourly Employees Effective 1/1/19" asserting under "Make Up Time/Pay[:]"  "Wayfair will not reimburse for time missed as a result of technical issues.")).  Plaintiffs allege that because system updates were unannounced and could prolong the amount of time that CSEs spent becoming call ready, "to be safe" CSEs had to begin their call-ready procedures "well in advance of their scheduled shifts" to avoid incurring attendance points.  (Mem. at 6; *Id.* Ex. 3 ¶ 14, Ex. 4 ¶ 14, Ex. 5 ¶ 14, Ex. 6 ¶ 14, Ex. 7 ¶ 14, Ex. 8 ¶ 14, Ex. 9 ¶ 14, Ex. 10 ¶ 14).[8]

## B.      Procedural Background

On July 28, 2023, plaintiffs Kayla Counts, Kaylynn Major, and Erica Dujardin brought this action against Wayfair.

On December 8, 2023, plaintiffs filed an amended complaint, terminating Dujardin and adding Nathan Churchill as a named plaintiff.  The amended complaint contains four counts. Count 1 alleges violations of the FLSA, 29 U.S.C. §§ 201, *et seq*.; Count 2 alleges violations of the South Carolina Payment of Wages Act, SC Code Ann. §§ 41-10-10, *et seq*.; Count 3 alleges violations of the Oregon Wage Laws, Or. Rev. State. Ann. §§ 652.120 *et seq*., 653.045, 653.160, and 653.261; and Count 4 alleges violations of the Maine Wage Payment Law, Me. Stat. tit. 26, §§ 629, *et seq*.

The amended complaint also contains collective and class action allegations.  (*Id.* ¶¶ 112-176).  On December 8, 2023, plaintiffs moved for conditional certification under 29 U.S.C.

---

[8] Wayfair contends that when system updates were to be installed, CSEs were specifically instructed to leave their computers on so that the updates could be installed overnight or that it dedicated time during a CSE's shift so that they were paid for the installation time.  (Opp. at 6-8; *Id.* Ex. A ¶ 22).  It further notes that the quoted portion of the manual is stated in the context of "technical issues (such as equipment problems or internet outages) that prevent you from working."  (Opp. at 11-12; Mem. Ex. 13).

§ 216(b) and for the issuance of court-authorized notice.  (ECF No. 29; Mem. at 1).  Plaintiffs

sought to represent:

> All current and former hourly-paid remote Customer Service Employees
> ("CSEs") that held the job titles of Customer Service Representative ("CSR"),
> Inbound Sales Specialist ("ISS"), or Customer and Resolution Expert ("CARE")
> who worked for Defendant at any time during the three years preceding the date
> granting conditional certification (the "FLSA Collective").

(Mem. at 1).

At the hearing on plaintiffs' motion to conditionally certify the collective, the Court

instructed plaintiffs to redefine their proposed collective in order to make it as precise as possible

and requested supplemental briefing on the updated proposal.  (Hearing Tr. 18: 18-19).  Plaintiffs

then submitted a supplemental memorandum and amended proposed definition of the collective.

Plaintiffs currently seek to represent:

> All hourly remote employees who are responsible for handling inbound phone
> calls, chats, or e[-]mails for the entirety of their shift from Wayfair's nonbusiness
> customers regarding existing product orders or new product orders.  This includes
> employees between [insert 3 years from Order] to the present, and specifically
> does not include any individual subject to an arbitration agreement or supervisory
> employees.

(Supp. Mem. at 2).  Wayfair has opposed the motion.

II.     **Analysis**

   A.     **Conditional Certification**

The Fair Labor Standards Act requires an employer to compensate their employees "not

less than one and one-half times the regular rate at which [the employee] is employed" for each

hour worked in excess of 40 hours per workweek unless those employees are exempt.  29 U.S.C.

§§ 207(a)(1), 213(a)(1).  Employees who serve in *bona fide* executive, administrative, or

professional capacities are exempt from that requirement.  *Id.* § 213(a)(1).  Section 216(b)

creates a private right of action for employees to recover unpaid overtime if their employers

violate the FLSA, and also provides employees with the option of bringing a collective action:

> An action . . . may be maintained against an employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* § 216(b).

Collective actions under the FLSA were "created to promote the 'efficient adjudication of similar claims, so similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute claims.'" *Iriarte v. Café 71, Inc.*, 2015 WL 8900875, at *2 (S.D.N.Y. Dec. 11, 2015) (quoting *Lynch v. United States Auto Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007)); *see also Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 58 (1st Cir. 2007) ("The Supreme Court has noted that the FLSA itself is meant to offset the superior bargaining power of employers both for particular employees at issue and broader classifications, and to offset the resulting general downward pressure on wages in competing businesses." (citing *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 302 (1985))).

Unlike class actions under Fed. R. Civ. P. 23, "FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Iriarte*, 2015 WL 8900875, at *2 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010)).  It is well-established that "actions brought for violation of the [FLSA] cannot be brought as [Rule 23] class actions," and instead, "must be brought [as opt-in collective actions] pursuant to the procedures in [29 U.S.C. § 216]." *Trezvant*, 434 F. Supp. 2d at 57.

Where, as here, plaintiffs seek to exercise their rights to bring suit on behalf of others, district courts may facilitate the process of sending notice to others who may be similarly

situated.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989).  Many courts

follow a two-step approach to determine whether to issue notice.  *See Trezvant*, 434 F. Supp. 2d

at 43; *Darden v. Colbea Enterprises, L.L.C.*, 2024 WL 2025769, at \*2 (D. Mass. May 7, 2024).[9]

Under that approach, "the court makes an initial determination of whether the potential

[collective] should receive notice of the pending action and then later, after discovery is

complete, the court makes a final 'similarly situated' determination."  *Trezvant*, 434 F. Supp. 2d

at 42.  Plaintiffs here seek an initial determination that notice of the lawsuit should issue to other

customer-service employees.

The standard for that initial determination is "fairly lenient" and "typically results in

conditional certification of the representative [collective]."  *Id.* at 43.  To issue notice, the

plaintiffs need only show that there is "some factual support"—a modest factual showing or

asserting substantial allegations—that the potential plaintiffs are similarly situated.  *See*

*Melendez Cintron v. Hershey P.R., Inc.*, 363 F. Supp. 2d 10, 16 (D.P.R. 2005) (following the

view of "[m]ost" courts that the plaintiff must show "some factual support for the allegations

[that others are similarly situated] before [the] authorization of notice"); *Trezvant*, 434 F. Supp.

2d at 43 (defining "substantial allegations" as "detailed allegations supported by affidavits that

successfully engage defendant's allegations to the contrary") (collecting cases); *Hipp*, 252 F.3d

at 1219.

Here, plaintiffs have satisfied the relatively lenient standard.  As an initial matter, they

---

[9] That two-step approach is often called the *Lusardi* test, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) (discussing and rejecting *Lusardi* test).  There are, however, other standards emerging in other circuits.  *See id.*; *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023).  The First Circuit recently described the conditional certification process as "entail[ing] a 'lenient' review of the pleadings, declarations, or other limited evidence to assess whether the 'proposed members of a collective are similar enough to receive notice of the pending action.'"  *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *Swales*, 985 F.3d at 436).

have modified the proposed collective from their motion for conditional certification.  They

initially sought to issue notice to "[a]ll current and former hourly-paid remote Customer Service

Employees ("CSEs") that held the job titles of Customer Service Representative ("CSR"),

Inbound Sales Specialist ("ISS"), or Customer and Resolution Expert ("CARE") who worked for

Defendant at any time during the three years preceding the date granting conditional

certification."  (ECF No. 30).

At an oral argument, the Court noted various concerns with the proposed collective,

including the use of the label "Customer Service Employees," the inclusion of employees subject

to an arbitration agreement, and its lack of specificity.  (ECF No. 36-1 at 5, 7-8, 14).  Defendant

also raised the concern that the job titles used in the initial motion for conditional certification

"are not job titles that Wayfair uses."  (*Id.* at 11).  Defendant specifically explained that there

were "employees that fall within those definitions but who are not subject to the policies that are

at issue here and who do not perform the work that plaintiffs allege [that] they perform off the

clock," such as fraud specialists and trainers of the various forms of customer-service

representatives.  (*Id.* at 11-13).

> Plaintiffs now seek to conditionally certify the following redefined collective:
>
> All hourly remote employees who are responsible for handling inbound phone
> calls, chats, or e[-]mails for the entirety of their shift from Wayfair's nonbusiness
> customers regarding existing product orders or new product orders.  This includes
> employees between [insert 3 years from Order] to the present, and specifically
> does not include any individual subject to an arbitration agreement or supervisory
> employees.

(Supp. Mem. at 2).

The lack of job titles in the newly proposed collective still presents some case-

management concerns.  However, defendant represents that "[it] has broad categor[ies] of jobs

that fall under the front line customer service and front line sales," and that "each of those broad

10

categories contain dozens of different job titles and employees who perform fundamentally different work and are subject to fundamentally different policies than the ones at issue here." (ECF No. 36-1 at 11).  Thus, defining the collective based on duties, rather than job titles, appears to be reasonable under the circumstances.  And it appears that increasingly "it is not unusual for employees of a single company who have similar job duties to have different job titles, and that should not prevent conditional certification."  *Drake v. Tufts Associated Health Maint. Org., Inc.*, 2021 WL 2767308, at \*4 (D. Mass. Feb. 12, 2021) (granting conditional certification to a collective defined by job duties); *see also Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 436-37 (D.N.M. 2018) (granting conditional certification to a collective including 36 different job titles that contained the terms "Care Coordinator" or "Care Manager" and "whose job duties included Care Management Work").

In any event, plaintiffs have made the modest factual showing that members of the redefined collective are sufficiently similarly situated to justify conditional certification.  They have offered declarations and documents that indicate that the proposed members performed similar job duties with similar expectations.  For example, even though they held different job titles, the named plaintiffs each declared that their jobs involved providing support and assistance to consumer customers of Wayfair who called to place or discuss orders from the company.  (*See* Counts Decl. ¶¶ 2-3; Major Decl. ¶¶ 2-3; Churchill Decl. ¶¶ 2-3; Supp. Resp. at 2).  Likewise, the job descriptions for advertised positions that plaintiffs include within the proposed collective are also similar.  They indicate that those positions require remotely helping customers navigate inbound communications about possible sales or post-order issues.  (Supp. Mem. Exs. 3, 4, 6).

Furthermore, the allegedly relevant employee guides and policies attached by plaintiffs appear to apply to all defendant's employees or to all its virtual, hourly employees.  (Mem. Exs.

11, 13).  The Wayfair employee guide addendum, parts of which have been submitted by

defendant, appears to apply specifically to those employees who are involved with the "contact

center," and discusses an attendance-points system similar to that described by the named

plaintiffs.  (Opp. Ex. G; Counts Decl. ¶ 15, Churchill Decl. ¶ 15, Major Decl. ¶ 15).

There is also evidence that members of the proposed collective were paid an hourly

wage, regularly worked more than 40 hours per week, and were paid some amount of overtime.

(*See, e.g.*, Counts Decl. ¶¶ 4-5; Major Decl. ¶¶ 4-5; Churchill Decl. ¶¶ 4-5; Schultz Decl. ¶¶ 4-5;

Thacker Decl. ¶¶ 4-5).  The named plaintiffs are allegedly subject to the same clocking-in

procedures, the same call-ready programs and procedures, and the same technology-related

issues.  (Counts Decl. ¶¶ 10-14; Major Decl. ¶¶ 10-14; Churchill Decl. ¶¶ 10-14).

Defendant contends that the amended proposed collective is nonetheless not subject to a

common policy or plan.  It maintains that CARE representatives, in particular, do not fall within

the proposed collective, because they do not field incoming customer communications for the

entirety of their shifts, and that therefore they are not similarly situated, as a matter of law, to

those employees who do.  (Supp. Resp. at 5).  It has submitted a declaration that states that

CARE team employees both field inbound communications from customers and respond to

tickets in the same shift.  (Supp. Resp. at 4 (citing Fellows Decl. ¶¶ 3-4)).  And it suggests that

when the CARE agents are assigned to respond to tickets, they are not "call-ready" and do not

use the tools needed to receive inbound communications from customers.  (Supp. Resp. at 4

(citing Fellows Decl. ¶¶ 3-4)).

However, that declaration is by a senior manager of the Supplier Engagement Team and

Replacement Part Operations, not the CARE team.  (Fellows Decl. ¶ 2).  It is not clear from the

present record whether CARE agents do disconnect from certain communications software when

they respond to tickets rather than calls.  Plaintiffs contend that CARE agents still fall under the collective definition because responding to "tickets" for part of all of a shift is covered within the description of "handling inbound phone calls, chats, or e[-]mails for the entirety of their shift." (Supp. Reply at 3).

For present purposes, it is sufficient that CARE agents appear to be similarly situated to the other employees of the collective.  Defendant's declaration from a CARE team manager states that CARE agents are required to be "call-ready" under Wayfair's attendance policy. (Dutertre Decl. ¶¶ 2, 9 (citing Opp. Ex. G at 11)).  That policy—according to defendant's own declarations—is the same attendance policy that requires sales agents and customer-service specialists such as Counts and Major to be "call-ready."  (Sandoval Decl. ¶¶ 2, 9; Herrera Decl. ¶¶ 2-3, 9; Opp. Ex. G at 11).[10]

In any event, at the conditional-certification stage, "courts routinely grant certification where the proposed [collective] members' job titles or duties are not exactly the same, as long as they are similar." *Lichy v. Centerline Commc'ns LLC*, 2018 WL 1524534, at *3 (D. Mass. Mar. 28, 2018) (collecting cases); *see Trezvant*, 434 F. Supp. 2d at 48 ("Although there are clear differences between these three positions, there are sufficient similarities to have warranted a finding, at this initial phase, that these positions are similarly situated."); *see also Klapatch v. BHI Energy I Power Servs., LLC*, 2019 WL 859044, at *2 (D. Mass. Feb. 22, 2019) (granting conditional certification despite the defendant's contention that the work assignments, job functions, and respective payment differed across members of the collective).  It may ultimately

---

[10] Plaintiffs contend that the policy submitted by defendant was superseded by another.  (Reply at 9).  In any event, defendant's declarations that identify various members of the proposed collective as subject to the same attendance policy for some period of time is relevant to the claim that members of the proposed collective were subject to the same allegedly unlawful policies regarding timekeeping and attendance.

prove to be correct that the collective members are not similarly situated in ways material to

plaintiff's overtime claim.  But at this stage, plaintiffs have put forth at least some substantial

evidence that they are, and that is sufficient for conditional certification and the issuance of

notice.

### B.  Notice

"The specific content of the notice is entrusted to the court's discretion."  *Roy v. FedEx*

*Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 74 (D. Mass. 2018) (citing *Hoffmann-La Roche*

*Inc.*, 493 U.S. at 170-72).  Plaintiffs have attached a proposed notice and opt-in consent form to

their memorandum in support of their motion for conditional certification.  (ECF No. 30-1).

They seek a 60-day opt-in period from the date that the notice is sent.  (Mem. at 1).  Defendants

have objected to certain selections of that notice and to the proposed delivery methods.  (*See*

Opp. at 19-20; Supp. Resp. 7-9; ECF No. 37-1).

#### 1.  Notice Language

Defendant proposes several amendments and additions to the notice to which plaintiffs do

not appear to object.  Those edits will be incorporated into the notice.[11]

Defendant requests that the Court clarify that the collective "only includes employees

who worked at Wayfair between the date three years prior to the conditional certification order

---

[11] Specifically, defendant's edits in Part 1 of the notice (concerning valid releases) and the additional
language regarding defendant's litigation position in Part 2 will be added.  In Part 2, defendant contends that the
notice should state some additional language specifying how it disputes plaintiff's claims.  (*Id.* at 28).  They seek to
add:  "Specifically, Wayfair denies that it has ever required any CSEs to perform any pre-shift, mid-shift, or post-
shift activities off the clock without pay.  Wayfair further denies that CSEs were prohibited, encouraged, or
pressured, by policy or otherwise, to not clock in for all compensable work activities."  (Supp. Resp. Ex. 1 at 2).

"Courts require that a notice be proportional and reflect a defendant's position."  (*Id.* (citing *Aguilar v.
Mgmt. & Training Corp.*, 2017 WL 4277139, at *8 (D.N.M. Jan. 27, 2017); *Martin v. Sprint/United Mgmt. Co.*,
*2016 WL 30334*, at *17 (S.D.N.Y. Jan. 4, 2016))).  The proposed statement is closer to being proportional to
plaintiffs' several-sentence articulation of their position and remains concise.  Accordingly, the Court will require
the notice to be modified to include the proposed language.

and December 31, 2022 (not to the present, as Plaintiffs propose)."  (Supp. Resp. at 5).  Plaintiffs

object to that proposed wording, although not to the proposal that the collective excludes any

individual subject to an arbitration agreement.  (Supp. Reply at 2).  Because the Court agrees that

the plaintiffs' proposed definition more clearly excludes those individuals subject to the

arbitration agreement and includes those employees hired prior to January 1, 2023, who

continued to work after December 31, 2022, it will maintain plaintiffs' proposed language on

that issue.

Defendant also contends that the notice should inform recipients of their litigation

obligations, requesting to incorporate language similar to that used in *Drake v. Tufts Associated*

*Health Maint. Org., Inc.*, 2021 WL 2767308, at *6 (D. Mass. Feb. 12, 2021).  (Opp. at 28; *see*

ECF No. 37-1 at 3-4).[12]  Plaintiffs object to some portions of that language as potentially chilling

participation.  *See Gardner v. Fallon Health & Life Ins. Co., Inc.*, 2021 WL 4459525, at *5 (D.

Mass. Sept. 29, 2021) (holding "the defendants do not identify any specific 'risks' in their

briefing, nor do they explain why the parties' social media accounts should be singled out.");

*Clark v. Cap. Vision Servs., LLC*, 2022 WL 2905356, at *5 (D. Mass. July 22, 2022) (removing

references to obtaining discovery from social media accounts).  Because there is no showing at

this stage that social media activity specifically is likely to be discoverable, and because it may

---

[12] The proposed language reads:

> If you opt into this lawsuit, you will assume the role of a party to the litigation, which comes with
> certain obligations and risks.  If you join the case, you may be asked to provide relevant
> documents, respond to written questions, and provide testimony under oath at deposition, which
> may take place remotely (via videoconferencing) or in Boston, Massachusetts.  You also may be
> required to attend and testify at the trial of this matter, which may also take place remotely (via
> videoconferencing) or in Boston.  Finally, you will be required to preserve and may be required to
> produce evidence relevant to your activities during your work hours while an employee at Wayfair
> for the relevant time period, which could include, but is not limited to, your computer and social
> media activity during work hours, potentially at your own expense.

(ECF No. 37-1 at 3-4).

be encompassed by "computer activity," the reference to social media will be removed.[13]

### 2.   Notice Delivery

Plaintiffs seek to issue notice by mail, e-mail, and text message and then to issue one reminder text message 30 days into the 60-day notice period.  (Mem. at 18-19).  Defendant asserts that the Court should not authorize notice by text message.  (Opp. at 19).

The Court will permit plaintiffs to issue notice by mail and e-mail.  Courts have routinely authorized notice by e-mail in FLSA actions.  *See, e.g.*, *Wright v. Liberty Mut. Grp., Inc.*, 683 F. Supp. 3d 91, 97 (D. Mass. 2023); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 163 (D. Mass. 2019); *Torrezani v. VIP Auto Detailing, Inc.*, 2017 WL 2951618, at *2 (D. Mass. May 31, 2017).

The Court does not, however, see the need for notice by text message as well.  While text messaging may be a viable means of communicating with prospective members, it has the potential to be unduly intrusive, and is not likely to be necessary if notice is also provided by mail and e-mail.  *See Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 122 (D.D.C. 2018) ("The Court agrees with Plaintiffs that some form of electronic notice is justified in this case . . . .  Nonetheless, the Court is concerned that, even in the social-media era, unsolicited phone calls and text messages remain a significant intrusion on individuals' privacy." (internal citation omitted)).  Notice by mail and e-mail will ensure that potential plaintiffs are informed of the collective action and provided an opportunity to opt-in in a timely fashion.  *See Drake*, 2021 WL 2767308, at *4.

The Court will allow plaintiffs to send one reminder notice 30 days following the

---

[13] That may be accomplished by removing the words:  "and social media."  The references to possible travel to Boston will be maintained.

issuance of the initial notice.  *See Camp v. Bimbo Bakeries USA, Inc.*, 2019 WL 440567, at \*5 (D.N.H. Feb. 4, 2019) (authorizing reminder notice to non-responsive members of the collective 45 days after initial notice); *Noll v. Flowers Foods, Inc.*, 2017 WL 11516828, at \*2 (D. Me. Jan. 20, 2017) (authorizing two reminder notices during opt-in period).  However, that notice must be sent via mail and/or e-mail, rather than text message.

Accordingly, the Court will authorize notice to be sent by mail and e-mail.  Further, it will authorize a reminder notice to be sent by either or both of those same methods to all members of the collective who have not yet returned signed consent forms 30 days following the initial notice.

## III.   Conclusion

For the foregoing reasons, plaintiff's motion to conditionally certify a collective action and authorize notice of that action pursuant to 29 U.S.C. § 216(b) is GRANTED.  It is hereby ORDERED that defendants shall produce to plaintiffs' counsel the names, last known addresses, dates and location of employment, and email addresses for the conditionally certified collective-action members in electronic and importable format within 21 days of this Order.  It is further ORDERED that plaintiffs shall submit a further amended proposed Notice and Opt-In Consent Form to the Court for its approval within 7 days of this Order.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV

Dated:  August 5, 2024                 Chief Judge, United States District Court